# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

KRISTI DAVIS, formerly known )
as Kristi Howard, )
    *Plaintiff*, )
)
v. ) Case No.:CIV-18-118-D
)
BOARD OF COUNTY )
COMMISSIONERS OF )
STEPHENS COUNTY, a political )
subdivision of the State of )
Oklahoma, )
    *Defendant*. )

## ORDER

Before the Court is the Motion and Brief for Summary Judgment [Doc. No. 36] filed by Defendant Board of County Commissioners of Stephens County pursuant to Fed. R. Civ. P. 56(a). Plaintiff Kristi Davis filed a Response in Opposition [Doc. No. 55], to which Defendant has replied [Doc. No. 61] and sur-replied [Doc. No. 67].

## BACKGROUND

The following are undisputed facts unless otherwise indicated. Plaintiff's employment at the Stephens County Fairgrounds ("Fairgrounds") began on November 20, 2013. Motion, Doc. No. 36, Ex. 1, 118:2–8. During Plaintiff's employment, Mike Anderson ("Anderson") was the Stephens County Fairgrounds Director. *Id.* at Ex. 5, 100:21–25. Anderson reported to the County Commissioner over the Fairgrounds, David McCarley ("McCarley") in 2016 and Todd Churchman ("Churchman") in 2017. *Id.* at Ex. 2; Ex.5. Anderson supervised Lyndol Brosh ("Brosh"), and Brosh, in turn, was Plaintiff's supervisor. *Id*. at Ex. 1, 125:14–20. Plaintiff considered herself on friendly

1

terms with Anderson and McCarley and felt they were approachable. *Id.* at Ex. 1, 143:6–25.

During Plaintiff's employment, a Stephens County written policy prohibited sexual harassment, discrimination, and retaliation against its employees ("Policy"). *Id.* at Ex. 9, 102–03. According to the Policy, if an employee suspected a violation, the employee was to report the suspect conduct to a supervisor within three calendar days of the offense. *Id.* Plaintiff, Brosh, and Shannon Lane ("Lane")—Plaintiff's co-worker—all acknowledged receipt of the Policy. *Id.* at Ex.1, 120:1–16; Ex. 11; Ex. 12.

*The Lane Incident*

On March 17, 2016, after seeing a cat inside the Fairgrounds, Lane made the following remark in Plaintiff's presence: "[Y]our pu*** is hungry" ("Cat Comment"). *Id.* at Ex. 13; Ex. 4. The Cat Comment was timely reported to Anderson, who reported it to McCarley. *Id*. at Ex. 2; Ex. 14. Four days later, on March 21, 2016, McCarley and Anderson met with and reprimanded Lane for the Cat Comment. *Id.* at Ex. 2, 15:14–25; Ex. 14. On May 4, 2016, McCarley held a meeting with Fairground employees at which McCarley reviewed the Stephens County sexual harassment policies. *Id.* at Ex. 16; Ex. 17. Plaintiff is satisfied with the way Stephens County handled the Cat Comment. *Id.* at Ex. 1.

Plaintiff asserts that after she reported the Cat Comment, her co-workers alienated Plaintiff and refused to help her, despite their duty and need to do so. *Id.* at Ex. 1, 151:18–22; Complaint at 3, ¶ 17. Nevertheless, there was no explicit indication that when Plaintiff was allegedly denied help it was because of the Cat Comment. Response

at 5. Plaintiff's co-workers would say: "We can't say certain things around Kristi." *Id.* at 4. Plaintiff also asserts that, after the Cat Comment, her co-workers left rooms after she entered them. Motion at Ex.1, 146: 6–22, 150:8–20. Plaintiff alleges she brought these incidents to Brosh's attention, but Brosh failed to take any action and subsequently started sexually harassing her. Response at 1–2, 11.

*Allegations of Harassment Against Brosh*

On October 16, 2016, Brosh allegedly told Plaintiff he dreamed about them kissing, and Brosh said that Plaintiff was a good kisser. Motion at 6; Response at 5. Again, in November 2016, Brosh told Plaintiff he had a dream about them kissing. *Id.* at Ex. 1, 129:22–25. In early December 2016, Brosh told Plaintiff he had a dream in which he and Plaintiff went "all the way" and that "it was great." *Id.* at Ex. 1, 130:1–3. On December 21, 2016, Plaintiff and Brosh exchanged text messages. *Id.* at Ex. 1, 130:16–20. In the December 21, 2016 text conversation, Brosh asked Plaintiff about her dream and whether Brosh tried to kiss Plaintiff in the dream. *Id*. As part of the text conversation, Plaintiff denied any kiss attempt in the dream and Brosh told her she needed to "have better dreams than that." *Id*.

In December of 2016, Plaintiff claimed Brosh put his arm around her and told her that she should come to him, not Anderson, about "things that [were] going on at the fairgrounds" and said, "OK little buddy." *Id.* at Ex. 1, 130:4–11. Plaintiff also claimed Brosh would stop by Plaintiff's house and make non-sexual small talk with her, asking about Plaintiff's personal life and romantic interests. *Id*. at 130:12–14, 134:15–25; Response at 6.

3

Plaintiff did not report these incidents within three days of their occurrence, as required by the Policy. *Id.* at Ex. 18. It was not until January 31, 2017, that Plaintiff reported Brosh's alleged behavior to Anderson. *Id.* at Ex. 1, 132:9–19. Two days later, on February 1, 2017, Anderson relayed the allegations about Brosh to Commissioner Churchman. *Id.* at Ex. 5, 31:4–24, 32:19–33:1–2. Within minutes of Anderson's report to Churchman, Churchman relayed Plaintiff's allegations to the Stephens County District Attorney. *Id.* at Ex. 5, 34:13-25, 35:1-8. On February 2, 2017, the District Attorney's office interviewed Plaintiff. *Id.* at Ex. 1, 16:1-7. During the interview, Plaintiff said Brosh had "never touched her inappropriately and that the extent [of the alleged sexual harassment] was just comments that she believed were sexual in nature." *Id.* at Ex. 21, 70. Ex. 21. Plaintiff testified at her deposition in this case that she did not mention Brosh stopping by her house during the investigation because she did not consider it a "sexual gesture," and did not feel it was "inappropriate," though Plaintiff did feel uncomfortable with Brosh touching her. Motion at Ex. 1, 144:2–19, 197:6–19, 199:2–22; Response at 7.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Universal Underwriters Ins. Co. v. Winton*, 818 F.3d 1103, 1105 (10th Cir. 2016). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v.*

4

*Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court's inquiry must be whether the evidence, when viewed "through the prism of the substantive evidentiary burden," *Anderson*, 477 U.S. at 254, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Although the Court views all facts in the light most favorable to the nonmoving party at the summary judgment stage, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

## DISCUSSION

Defendant moves for summary judgment on Plaintiff's claims for relief under Title VII for: (1) gender discrimination/sexual harassment; (2) retaliation; and, (3) pay disparities. Defendant also moves for summary judgment on Plaintiff's pay disparity claim asserted under the Equal Pay Act. The Court will address each, in turn.

### I.  Plaintiff's Title VII gender discrimination/sexual harassment claims against Defendant fail as a matter of law.

Plaintiff argues that Defendant discriminated against her on the basis of her gender (1) through Brosh's alleged sexual harassment and (2) by subjecting Plaintiff to a hostile work environment following Plaintiff's reporting of Lane's Cat Comment. Response at 27.

5

> *a. Brosh's conduct was not actionable conduct under Title VII as it was infrequent and not sufficiently hostile or abusive.*

Defendant argues Brosh's conduct did not rise to the level of actionable sexual harassment under Title VII. Motion at 29.

Title VII forbids actions taken based on sex that "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1). Sexual harassment is actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" *Faragher v. Boca Raton*, 524 U.S. 775, 786 (1998) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (Title VII "forbids only behavior so objectively offensive as to alter the conditions of the victim's employment.").

Workplace conduct is not to be measured in isolation. Instead, "whether an environment is sufficiently hostile or abusive" must be judged "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher*, 525 U.S. at 787–88.

During Plaintiff's three years of employment, there was a three-month period during which Brosh made discrete comments about kissing. Response at 5–6. Brosh

once shared a sex dream. *Id*. Brosh once put his arm around her and made small talk with her, though Plaintiff did not believe these incidents were sexual in nature. *Id.* at 6.

The facts supported by evidence, accepted as true and viewed in the light most favorable to Plaintiff show that over the span of three months, Brosh made four isolated comments Plaintiff deemed inappropriate. Brosh's comments were infrequent. Both objectively, and by Plaintiff's own admission, Brosh's comments and actions were not severe. After all, Plaintiff said Brosh had "never touched her inappropriately and that the extent [of the alleged sexual harassment] was just comments that she believed were sexual in nature." *Id*. at Ex. 21, 70; Ex. 21. Plaintiff did not consider Brosh stopping by her house a "sexual gesture," and did not feel it was "inappropriate," though she may have felt uncomfortable. Although Plaintiff was satisfied with the way her superiors had handled her previous claim of sexual harassment, Plaintiff did not timely report Brosh's conduct. Response at 5–6. There was nothing about Brosh's conduct that was "physically threatening or [humiliating]," but rather, what is in the record is more akin to "mere offensive utterance[s]." *See Faragher*, 525 U.S. at 787–88.

It is clear to the Court that after assessing the frequency of the behavior measured in light of its seriousness, the facts cannot, as a matter of law, be the basis of a valid claim. *See Tilghman v. Kirby*, No. CIV-13-73-D, 2015 WL 5472498, at *3 (W.D. Okla. Sept. 16, 2015) (DeGiusti, J), *aff'd*, 662 F. App'x 598 (10th Cir. 2016) (finding the facts did not amount to actionable sexual harassment where a plaintiff was invited into a defendant's office to view inappropriate pictures, defendant called her names, lightly kissed her, forwarded sexual jokes to her phone, and asked for hugs); *Hearron v. Voith*

7

*Indus. Servs., Inc.,* 483 F. App'x 453, 454 (10th Cir. 2012) (upholding district court's grant of summary judgment on a Title VII claim where plaintiff complained "that on one occasion, her supervisor patted her buttocks and stated 'you need a spanking and you're gonna like it,'" and also that "at some point, he was 'overly friendly' and flirtatious and 'shared his personal business' with her.").

> *b. Plaintiff did not face a hostile work environment because of her co-worker's actions, as the conduct at issue was not severe and pervasive.*

Defendant also asserts that Plaintiff cannot establish that her co-workers' conduct was severe or pervasive, or that it altered Plaintiff's employment and created a hostile work environment. Motion at 29.

Title VII prohibits subjecting an employee to a hostile work environment. "To establish a sexually hostile work environment existed, a plaintiff must prove the following elements: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1262–63 (10th Cir.2005) (internal quotation omitted); *see Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir.2007).

As to the fourth element—the one at issue here—the court of appeals has explained the severity or pervasive requirement as follows:

"For a hostile environment claim to survive a summary judgment motion, a plaintiff must show that a rational jury could find that the workplace [was] permeated

with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Penry v. Fed. Home Loan Bank,* 155 F.3d 1257, 1261 (10th Cir. 1998). To evaluate whether a working environment is sufficiently hostile or abusive, the Court examines all the circumstances, including: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). In addition, the environment must be both subjectively and objectively hostile or abusive. *Id.*; *see also Davis v. U.S. Postal Serv.,* 142 F.3d 1334, 1341 (10th Cir. 1998).

Plaintiff here alleges "her male co-workers refused to help her with tasks, would all get up to leave a room when she entered, would knowingly ignore her if she asked for any kind of help, and would say 'we can't say certain things around Kristi.'" Response at 5. Plaintiff was refused help between two and nine times. Reply at 12. None of Plaintiff's co-workers explicitly said these things were happening because of the Cat Comment. Response at 5. Even if the Court draws the inference that the Cat Comment was the catalyst for these events, the facts here do not rise to the level of actionable conduct under Title VII.

In *Morris v. City of Colorado Springs*, the Tenth Circuit upheld a district court's grant of summary judgment where an employee was hit on the head twice by her co-worker, had human tissue thrown at her, and her co-worker, on several occasions, yelled

at her and made demeaning comments. 666 F.3d 654, 666 (10th Cir. 2012); s*ee also Sprague v. Thorn Americas, Inc*., 129 F.3d 1355, 1365–66 (10th 1999) (concluding that "five separate incidents of allegedly sexually-oriented, offensive comments either directed to [the plaintiff] or made in her presence in a sixteen month period" were not sufficiently pervasive to support a hostile work environment claim); *Cf. Beck v. Mays Home Health, Inc*., No. CIV-10-566-D, 2012 WL 1066151, at *2 (W.D. Okla. Mar. 29, 2012) (DeGusti, J.) (denying summary judgment where a defendant, on several occasions, exposed her buttocks to employees, made suggestive comments, stated she liked to "judge men's cock size at meetings," and grabbed an employee's buttock).

Evaluating the totality of the circumstances and viewing the record in the light most favorable to Plaintiff, the Court finds Plaintiff cannot establish that the conduct at issue was sufficiently severe or pervasive to support a hostile work environment claim.

**II. Because Plaintiff did not engage in protected activity under Title VII, Plaintiff's retaliation claims fail as a matter of law.**

Next Defendant argues that Plaintiff's retaliation claims must fail as a matter of law because she never engaged in protected activity.

To establish a prima facie case of Title VII retaliation, Plaintiff must show that (1) she engaged in protected activity under Title VII; (2) she subsequently suffered an adverse employment action; and, (3) a causal connection existed between the protected activity and the adverse employment action. *Walker v. United Parcel Serv. of Am., Inc.,* 76 F. App'x 881, 889 (10th Cir. 2003).

According to the Tenth Circuit, to have engaged in protected activity under Title VII, the Plaintiff had to have been reasonable in believing the conduct she was reporting was actionable sexual harassment. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001); *accord Crumpacker v. Kansas Dep't of Human Res.*, 338 F.3d 1163, 1171 (10th Cir. 2003). *See also Neely v. City of Broken Arrow, Okla.*, No. 07-CV-0018-CVE-FHM, 2007 WL 1574762, at *2 (N.D. Okla. May 29, 2007).

  *a.* *Reporting the Cat Comment did not constitute protected activity under Title VII.*

Plaintiff responds that she engaged in a protected activity because she reported Lane's Cat Comment. Response at 24.

In *Clark County School District v. Breeden,* the Supreme Court found a Title VII retaliation claim was precluded because the plaintiff had not engaged in protected activity. In *Clark*, a male supervisor—in the presence of the aggrieved employee—read a comment that stated, "I hear making love to you is like making love to the Grand Canyon." 532 U.S. at 269. The employee in *Clark* claimed she was punished for complaining about the comment. *Id.* at 270. The Supreme Court concluded that the plaintiff did not engage in protected activity because "no reasonable person could have believed that the single incident recounted above violated Title VII's standard." *Id.* Like the supervisor in *Clark*, Lane made a single comment that precipitated a report. Motion at Ex. 13; Ex. 4. Like in *Clark*, Plaintiff was not the direct target of the comment; the Cat Comment was about a cat that was physically present before Lane and Plaintiff. *Id.* Even if the Court accepts the inference that Lane intended the Cat Comment as sly

11

innuendo, the Cat Comment is—at worst—an "isolated inciden[t] that cannot remotely be considered 'extremely serious,' as [the Supreme Court's] cases require." *Clark*, 532 U.S. at 271.

Therefore, the retaliation claim based on Plaintiff's reporting of Lane's conduct must fail as a matter of law. *See Crumpacker*, 338 F.3d at 1171.

      *a.*      *Reporting Brosh did not constitute protected activity under Title VII.*

Plaintiff further responds that Defendant retaliated against her because she reported Brosh's conduct. *See* Response at 23.

As stated above, Brosh made four isolated, infrequent comments. Brosh's comments and actions were, objectively, not severe. Plaintiff said Brosh had "never touched her inappropriately and that the extent [of the alleged sexual harassment] was just comments that she believed were sexual in nature." *Id*. at Ex. 21, 70; Ex. 21. Plaintiff did not consider Brosh stopping by her house a "sexual gesture," and did not feel it was "inappropriate," though she may have felt uncomfortable. There was nothing about Brosh's conduct that was "physically threatening or [humiliating]," but rather, what is in the record is more akin to "mere offensive utterance[s]." *See Faragher*, 525 U.S. at 787–88.

Viewing all facts in the light most favorable to Plaintiff, the Court cannot conclude that Plaintiff engaged in protected activity under Title VII by reporting this conduct. It would not have been objectively reasonable for Plaintiff to believe that the conduct she was reporting "amount[ed] to discriminatory changes in the terms and conditions of employment." *Clark*, 532 U.S. at 270; *see Zimpfer v. Aramark Mgmt.*

*Servs.*, LP, 795 F. Supp. 2d 1249 (D. Utah 2011) (finding that an employee could not have held a good faith, reasonable belief that the conduct he opposed constituted a violation of Title VII and thus had not engaged in protected activity).

The retaliation claim based on Plaintiff's reports of Brosh's conduct fails as a matter of law.

### III. There are issues of material fact precluding summary judgment on Plaintiff's pay disparity claims under Title VII and the Equal Pay Act.

Finally, Defendant moves for summary judgment on Plaintiff's pay disparity claims under Title VII and the Equal Pay Act. Motion at 30.

Plaintiff applied for a part-time janitorial position at the Fairgrounds on October 21, 2013. Motion, Ex. 1, 103:1,8. Plaintiff became a part-time, Fairgrounds housekeeper on November 20, 2013. *Id.* at Ex. 1, 117:24–25, 118:2–8. Housekeepers cleaned Fairgrounds facilities. *Id.* at Ex. 2, 16:15–25. In January of 2016, Plaintiff became a full-time housekeeper making $2100.00/month. *Id.* at Ex. 3. From October 2016 to February 2017, Plaintiff's wages with the County were $2300.00/month. *Id.* During the entirety of Plaintiff's employment, including the time Plaintiff was under the job description of "housekeeper," Plaintiff asserts she was performing groundskeeper duties. Response at 3.

Stephens County groundskeepers performed maintenance work, set up and tore down events at the Fairgrounds, cleaned the arenas, worked in the arenas, and mowed. *Id.* at Ex. 2, 17:7–14. Groundskeepers typically made $2667.43 monthly. *Id.* at Ex. 6. On December 5, 2016, Plaintiff's title was changed to "groundskeeper." *Id.* at Ex. 7.

13

Plaintiff's duties as a groundskeeper involved: sweeping; mopping; waxing and buffing floors; cleaning tables and chairs; setting up events with tables, chairs, coffee makers, and microwaves; opening and closing the Fairgrounds buildings; meeting and greeting events staff; and minor maintenance such as replacing ceiling tiles, replacing floor tiles, plumbing, and replacing light bulbs. *Id.* at Ex. 1, 171:1–15, 174:1–7. Plaintiff asserts she "performed nearly identical work to similarly-situated male employees," and yet was compensated at a lesser rate. Reply at 2. Further, Plaintiff asserts that when her job title was changed, she did not receive a raise. *Id.*

*Title VII Pay Disparity Claim*

Under Title VII, a plaintiff has the ultimate burden of proving her employer intentionally discriminated against her. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). Where a plaintiff seeks to use circumstantial evidence to show discriminatory intent, the burden-shifting framework of *McDonnell Douglas Corp. v. Green* applies. 411 U.S. 792, 793 (1973); *Adamson*, 514 F.3d at 1145.

First a plaintiff must establish a prima facie case of pay discrimination. If the plaintiff succeeds, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. If the defendant does so, the burden shifts back to the plaintiff to show that her protected characteristic was "a determinative factor in the defendant's employment decision" or that the defendant's explanation was merely pretextual. *Id.*

*a. Plaintiff has advanced enough facts to allow a reasonable jury to find pay discrimination under Title VII.*

To establish a prima facie case of pay discrimination under Title VII, Plaintiff must show she "occupies a job similar to that of higher paid males." *Sprague*, 129 F.3d at 1363 (quoting *Meeks v. Computer Assocs. Intern.,* 15 F.3d 1013, 1019 (11th Cir. 1994)).

Defendant here asserts that Plaintiff was hired as a housekeeper and that housekeepers perform different duties than groundskeepers. Motion at 31. As such, Defendant contends, Plaintiff has failed to show she occupied a job like those of higher paid males. But pointing to the fact that Plaintiff's job title was "housekeeper" when she was first hired is not enough. *See EEOC v. Cent. Kan. Med. Ctr.,* 705 F.2d 1270, 1273 (10th Cir. 1983). Plaintiff introduces deposition testimony from Anderson, her supervisor, where Anderson indicates that Plaintiff—since the beginning of her employment—performed work included in the groundskeeper job description. *See* Response at Ex. 4, 138:4–19. Anderson's testimony suggests Plaintiff sometimes did more work than her male groundskeeper counterparts. *Id*. Plaintiff's deposition testimony states that, as a housekeeper, she performed a lot of the same work her male, groundskeeper counterparts were performing. *Id*. at Ex. 1, 198:12–18.

Viewing these facts in the light most favorable to Plaintiff, this is enough to make out a prima facie case.

### b. *Defendant has proffered non-gendered reasons for the pay disparity.*

"Once a prima facie case is established, the defendant must articulate a 'legitimate, non-discriminatory reason for the pay disparity.' This burden is 'exceedingly light'; the defendant must merely proffer non-gender-based reasons, not prove them." *Sprague*, 129 F.3d at 1363.

Defendant asserts that even if Plaintiff was performing similar duties to those of higher paid male groundskeepers, male groundskeepers had additional job duties. Motion at 31. Male groundskeepers, Defendant asserts, "not only performed maintenance work and setup/tore down events, they also cleaned the arenas, worked in the arenas, and mowed." *Id*. Female groundskeepers did not perform these additional duties. *Id.*

By advancing this justification, Defendant shifts the burden back to Plaintiff to show that a discriminatory reason was more likely than not the motivating factor behind Defendant's actions.

### c. *There is a genuine dispute as to whether a discriminatory reason more likely than not motivated Defendant to pay Plaintiff less.*

Once the defendant advances a justification for the pay disparity, the plaintiff must show that the defendant, regardless of the proffered reasons, intentionally discriminated against her. *Sprague*, 129 F.3d at 1363; *see also Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 409 (10th Cir. 1993). That is, "the plaintiff must show that a discriminatory reason more likely than not motivated [the employer] to pay her less." *Sprague*, 129 F.3d at 1363. "A plaintiff produces sufficient evidence of pretext when she shows such

weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1280 (10th Cir. 2010).

As evidence of pretext, Plaintiff points to the fact that once Plaintiff's title was changed to groundskeeper, Plaintiff's pay raise was not processed. Response at 22. In other words, the fact that Defendant changed Plaintiff's title to match her male counterparts, knew Plaintiff was still getting paid less than her male counterparts, and then did nothing about it, was indicative of intentional discrimination. *Id.* Anderson's testimony includes facts stating that Plaintiff performed some of the duties Defendant asserts were reserved for male groundskeepers. *Id.* at Ex. 4 139: 5–6. Whether this evidence suffices to succeed on a Title VII claim is not at issue at this stage in the proceedings. This evidence, however, is enough to introduce a genuine factual dispute, precluding summary judgment. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000) ("[P]laintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

*Equal Pay Act*

Unlike Title VII, which requires proof of different pay for similar or comparable work, the Equal Pay Act imposes a stricter "substantially equal work" requirement. The Equal Pay Act requires proof that the work performed by male and female employees was "substantially equal in terms of skill, effort, responsibility, and working conditions."

*Miller v. Automobile Club of N.M., Inc.*, 420 F.3d 1098, 1119 (10th Cir. 2005); *see also* 29 U.S.C. § 206(d)(1). The primary question raised by Defendants' summary judgment motion regarding the Equal Pay Act claim is whether Plaintiff can present such proof and thus establish a prima facie case.[1]

The Court finds Plaintiff has identified sufficient facts and evidence in the summary judgment record to demonstrate a genuine dispute of material facts on her Equal Pay Act claim. Both Plaintiff and her male counterparts worked under Anderson. Plaintiff asserts, and Anderson, to some extent, corroborates, that Plaintiff was performing substantially similar duties as her male counterparts. Plaintiff's male counterparts were paid more even once Plaintiff's official job title was changed to match the duties she claims to have been performing from the beginning of her work tenure. Defendant asserts that Plaintiff and her male counterparts, nevertheless, performed different job duties. There is indication that Plaintiff was performing some of the duties Defendant asserts were reserved exclusively for male groundskeepers.

---

[1] Unlike Title VII's requirement of intentional discrimination, proof of an employer's intent is not necessary to establish a violation of the Equal Pay Act. Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to prove that the pay disparity was based on a factor other than gender. *See Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir.2006); *Tidwell*, 989 F.2d at 409; *see also* 29 U.S.C. § 206(d)(1). Although Defendants reargue their explanation for Plaintiffs wage disparity, this argument fails to carry their burden to establish an affirmative defense to liability under the Equal Pay Act. *See Mickelson*, 460 F.3d at 1311 ("[I]n order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense so clearly that no rational jury could find to the contrary.").

In short, on the record presented, a reasonable jury could conclude that, despite possible differences in the job responsibilities and efforts of Plaintiff and her male counterparts, they performed substantially equal work.

## CONCLUSION

The Court finds that genuine disputes of material fact preclude summary judgment on Plaintiff's Title VII pay disparity claim and Plaintiff's Equal Pay Act claim. The Court also finds that there are no genuine issues of material fact as to Plaintiff's Title VII retaliation and gender discrimination/sexual harassment claims.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 36] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED** this 30th day of September, 2019.

TIMOTHY D. DeGIUSTI
Chief United States District Judge